**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Case No. 14-11077-JLC** |
| **OLD DRONE CO., INC.,** | § | **Chapter 11** |
| **f/k/a ISR GROUP, INCORPORATED** | § | |
| | § | |
| **Debtor.** | § | |

---

**SECOND AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE**
**BANKRUPTCY CODE PROPOSED BY OLD DRONE CO., INC. f/k/a**
**ISR GROUP, INCORPORATED**

Dated:  December 18, 2014

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS, CONSTRUCTION, AND INTERPRETATION** .......................1

**ARTICLE II SUMMARY OF THE PLAN** .................................................................10

**ARTICLE III UNCLASSIFIED CLAIMS** ................................................................11

3.01.   Administrative Claims. ...................................................................11
3.02.   Priority Tax Claims. ........................................................................12
3.03.   U.S. Trustee Fees. ...........................................................................12

**ARTICLE IV CLASSIFICATION OF CLAIMS AND INTERESTS** .........................12

4.01.   Introduction. ....................................................................................12
4.02.   Claims Against and Interests in the Debtor. ....................................13

**ARTICLE V IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
CLAIMS AND INTERESTS** .................................................................................13

5.01.   Unimpaired Claims and Interests ....................................................13
5.02.   Impaired Claims and Interests ........................................................13
5.03.   Controversy Concerning Impairment ..............................................13

**ARTICLE VI TREATMENT OF CLAIMS AND INTERESTS** ...............................14

6.01.   DIP Loan Claim – Class 1 ..............................................................14
6.02.   Priority Wage Claims – Class 2 ......................................................14
6.03.   IRS Tax Claim – Class 3 ..................................................................14
6.04.   TDR Tax Claim – Class 4 ................................................................14
6.05.   Miscellaneous Secured Claim – Class 5 ..........................................15
6.06.   TCFI Secured Claim – Class 6 ........................................................15
6.07.   General Unsecured Claims – Class 7 ...............................................15
6.08.   Interests in the Debtor – Class 8 .....................................................16

**ARTICLE VII MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN** .......................................................................................................16

7.01.   Sources of Cash For Plan Distributions ..........................................16
7.02.   Calculation and Payment of the Buyer EBITDA Contribution ...........17
7.03.   The Liquidation Trust ......................................................................17
7.04.   Dissolution of the Committee ..........................................................20

**ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS** ...........................20

8.01.   Rejection of Executory Contracts ...................................................20
8.02.   Rejection Claims ..............................................................................21
8.03.   Bar to Rejection Claims ...................................................................21

i

**ARTICLE IX CONDITIONS TO CONFIRMATION DATE AND
EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION** ...........................................**21**

9.01.   Conditions Precedent to Confirmation Date ......................................................21
9.02.   Conditions Precedent to the Effective Date ......................................................22
9.03.   Consequences of Non-Occurrence of Effective Date ........................................22

**ARTICLE X EFFECT OF PLAN CONFIRMATION AND EFFECTIVE
DATE** ...............................................................................................................................**23**

10.01.   Binding Effect ...................................................................................................23
10.02.   Vesting of Assets ..............................................................................................23
10.03.   Assertion of Causes of Action, Defenses and Counterclaims............................23
10.04.   Discharge of the Debtor ...................................................**Error! Bookmark not defined.**
10.05.   Releases.............................................................................................................24
10.06.   Exculpation .......................................................................................................25
10.07.   Injunction ..........................................................................................................25
10.08.   Term of Bankruptcy Injunction or Stays ..........................................................25
10.09.   Effectuating Documents; Further Transactions; Timing ....................................26

**ARTICLE XI OBJECTIONS TO CLAIMS AND INTERESTS;
DISTRIBUTIONS**.........................................................................................................**26**

11.01.   Objections to Claims and Interests ....................................................................26
11.02.   Objection Deadline ............................................................................................26
11.03.   Settlement of Objections to Claims or Interests ................................................26
11.04.   No Interest on Claims ........................................................................................27
11.05.   Setoffs by the Debtor; No Waiver ....................................................................27
11.06.   Procedures for Treating and Resolving Disputed and Contingent Claims .........27
11.07.   Distributions Under the Plan..............................................................................28
11.08.   Duty to Disgorge Overpayments .......................................................................29

**ARTICLE XII ACCEPTANCE OR REJECTION OF THE PLAN** .......................................**29**

12.01.   Impaired Classes Entitled to Vote......................................................................29
12.02.   Acceptance by an Impaired Class ......................................................................29
12.03.   Section 1129(b) Cramdown ...............................................................................30

**ARTICLE XIII RETENTION OF JURISDICTION** ...............................................................**30**

13.01.   Jurisdiction........................................................................................................30
13.02.   Examination of Claims ......................................................................................30
13.03.   Determination of Disputes .................................................................................30
13.04.   Additional Purposes...........................................................................................31
13.05.   Failure of the Bankruptcy Court to Exercise Jurisdiction..................................33

**ARTICLE XIV MISCELLANEOUS PROVISIONS** .................................................................33

14.01.  General Notices.........................................................................................................33
14.02.  Plan Supplement .......................................................................................................34
14.03.  Exemption From Transfer Taxes ...............................................................................34
14.04.  Asserting and Curing Default Under the Plan ...........................................................34
14.05.  Revocation or Withdrawal of the Plan.......................................................................34
14.06.  Modification of the Plan ............................................................................................35
14.07.  Computation of Time.................................................................................................35
14.08.  Due Authorization......................................................................................................35
14.09.  Implementation ..........................................................................................................35
14.10.  Execution of Documents............................................................................................35
14.11.  Bankruptcy Restrictions.............................................................................................35
14.12.  Ratification.................................................................................................................36
14.13.  Integration Clause......................................................................................................36
14.14.  Interpretation .............................................................................................................36
14.15.  Severability of Plan Provisions..................................................................................36
14.16.  Governing Law ..........................................................................................................36

15263569.2

## INTRODUCTION

Old Drone Co., Inc. f/k/a ISR Group, Inc., as debtor and debtor-in-possession, proposes this Second Amended Plan of Liquidation pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties, results of operations, resolutions of certain material disputes, projections for future operations and liquidation, risk factors, a summary and analysis of the Plan, and certain related matters.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims and Allowed Interests in each of the Classes of Claims against and Interests in the Debtor are set forth in Article VI of this Plan.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning, if any, ascribed to that term in the Bankruptcy Code. To the extent that there is an inconsistency between a definition in this Plan and a definition in the Bankruptcy Code, the definition set forth in this Plan shall control. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan, provided, that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement. In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern unless the Plan provides otherwise. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules to the Disclosure Statement are incorporated herein. **The Plan Supplement and all exhibits to the Disclosure Statement have been, or will be, filed electronically with the Bankruptcy Court. Copies of the Plan Supplement and such exhibits may be viewed and/or downloaded from the Bankruptcy Court's PACER website.**

**Further, the Debtor will provide copies of any or all of the Plan Supplement and all exhibits to the Disclosure Statement upon written request submitted to:**

**Neligan Foley LLP**
**Attn: Ruth Clark**
**325 N. St. Paul, Suite 3600**
**Dallas, TX 75201**
**rclark@neliganlaw.com**

**1.01.** ***"Administrative Claim"*** means a Claim against the Debtor for payment or reimbursement of an administrative expense of a kind within the scope of Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2), including, without limitation, (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving such Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered, (b) Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, (c) all Claims arising under Bankruptcy Code section 503(b)(9), (d) all fees and charges

1

assessed against the Estate under the Bankruptcy Code or under section 1930 of chapter 123 of title 28 of the United States Code, and (e) all other claims entitled to administrative priority claim status pursuant to a Final Order.

**1.02.** ***"Advisory Committee"*** shall have the meaning ascribed to it in the Liquidation Trust Agreement.

**1.03.** ***"Allowance Date"*** means the date on which a Claim becomes an Allowed Claim or an Interest becomes an Allowed Interest.

**1.04.** ***"Allowed,"*** with respect to a Claim other than an Administrative Claim, means such a Claim, or any portion thereof, (a) that has been allowed by a Final Order, (b) that either (y) was listed in the Schedules as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero or (z) is the subject of a timely filed proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment of the Schedules) on or before the Objection Deadline or (ii) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order, (c) that is expressly allowed in a liquidated amount in the Plan; or (d) that is in an amount agreed to by the Debtor, the Liquidating Trustee and the Holder of such Claim; with respect to an Administrative Claim, means an Administrative Claim for which a timely written request for payment has been made in accordance with the Plan (if such written request is required) and as to which (y) no timely objection to its allowance has been filed or (z) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order; and, with respect to an Interest, means any Interest that appears, as of the Petition Date, in the Debtor's books and records except as provided in the Plan or otherwise determined by a Final Order.

**1.05.** ***"Asset"*** means any property owned by the Debtor or its Estate.

**1.06.** ***"Asset Purchase Agreement"*** means the agreement for the purchase and sale of all or substantially all of the Debtor's Assets under section 363 of the Bankruptcy Code as approved by the Bankruptcy Court under the terms of the Sale Order.

**1.07.** ***"Assigned Contract(s)"*** means any contract(s) assumed and assigned by the Debtor to the Purchaser under the terms of the Sale Order.

**1.08.** ***"Avoidance Action"*** means any Cause of Action arising under chapter 5 of the Bankruptcy Code including, but not limited to, Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553, or under any similar applicable law, including, without limitation, fraudulent transfer laws, whether or not any such Cause of Action has been asserted or commenced as of the Effective Date.

**1.09.** ***"Ballot"*** means the form of ballot distributed with the Disclosure Statement and the Plan to each Holder of an impaired Claim or Interest entitled to vote to accept or reject the Plan and which each such Holder may use to cast a vote to accept or reject the Plan.

**1.10.** ***"Balloting Agent"*** means Neligan Foley LLP, Attn: Ruth Clark, 325 N. St. Paul, Suite 3600, Dallas, Texas 75201, rclark@neliganlaw.com.

2

**1.11.** *"Balloting Deadline"* means October 21, 2014 at 5:00 p.m. Central Time, the deadline set by the Bankruptcy Court's order approving the Disclosure Statement for the receipt by the Balloting Agent of Ballots for accepting or rejecting the Plan.

**1.12.** *"Bankruptcy Case"* means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

**1.13.** *"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Bankruptcy Case.

**1.14.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Western District of Tennessee, Eastern Division, or any other court or adjunct thereof having jurisdiction over the Bankruptcy Case.

**1.15.** *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

**1.16.** *"Bar Date"* means the deadline for filing in the Bankruptcy Case proofs of Claims or Interests arising before the Petition Date against or in the Debtor, which date is September 3, 2014, other than for Claims whose filing deadline is otherwise subject to the Rejection Bar Date.

**1.17.** *"Business Day"* means any day other than a Saturday, a Sunday, a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.18.** *"Buyer"* means TCFI or such entity as TCFI may form for the purpose of purchasing the Debtor's Assets.

**1.19.** *"Buyer EBITDA Contribution"* means funds contributed to the Liquidation Trust by the Buyer specifically for the satisfaction of Class 7 General Unsecured Claims.

**1.20.** *"Cash"* means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.21.** *"Causes of Action"* means any and all claims, actions, arbitrations, proceedings, causes of action, rights, suits, complaints, notices of non-compliance or violation, enforcement actions, investigations, accounts, controversies, agreements, promises, rights of action, rights to legal or equitable remedies, rights to payment, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or Estate may hold against any Person, or which could be asserted by the Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as a debtor in possession (under Bankruptcy Code sections 1107(a) and 1108) or by any representative of the Debtor or the Estate, including but not

limited to all Avoidance Actions, all proceeds of and recoveries of same, and all actual and potential actions and causes of action identified in the Disclosure Statement that are not (i) released under the terms of this Plan or (ii) Retained Causes of Action.

    **1.22.**    *"Claim"* shall have the meaning provided in Bankruptcy Code section 101(5).

    **1.23.**    *"Collateral"* means any property or interest in property of (a) the Estate or, (b) after the Effective Date, of a reorganized Debtor, that is subject to a Lien to secure the payment or performance of a Claim, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

    **1.24.**    *"Committee"* means the Committee of Unsecured Creditors established in the Bankruptcy Case pursuant to section 1102(a) and 1102(b)(1) of the Bankruptcy Code.

    **1.25.**    *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

    **1.26.**    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of the Plan, which is scheduled to commence on December 18, 2014, at 11:00 a.m. Central Time, and as may be adjourned or continued from time to time.

    **1.27.**    *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

    **1.28.**    *"Creditor"* means any Person that is the Holder of a Claim against the Debtor.

    **1.29.**    *"Cure Amount"* means any amount required to be paid as a condition for the assumption of an Executory Contract under Bankruptcy Code section 365(b).

    **1.30.**    *"Debtor"* means ISR Group, Inc. and, as the context may require, such Entity reorganized pursuant to the Plan from and after the Effective Date.

    **1.31.**    *"DIP Loan Claim"* means the Claim of TCFI as provided under the terms of the Interim and Final DIP Orders entered by the Bankruptcy Court.

    **1.32.**    *"Disallowed"* when used with respect to a Claim or Interest, shall mean a Claim or Interest, or a portion thereof, that (a) has been disallowed by a Final Order or any provision of the Plan, (b) is listed in the Schedules in an amount of zero or as contingent, unliquidated or disputed and as to which no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, or (c) is not listed in the Schedules and as to which (i) no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, or (ii) no request for the allowance of an Administrative Claim (including a Fee Claim) has been filed by the deadline in Section 2.01 of the Plan or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law.

**1.33.** *"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as approved by the Bankruptcy Court and distributed contemporaneously with this Plan in accordance with Bankruptcy Code section 1125 and Bankruptcy Rule 3017, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.34.** *"Disputed"* means, with respect to a Claim (including any Administrative Claim) or Interest, a Claim or Interest, or any portion thereof, (a) that is neither Allowed pursuant to the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, (b) that is listed in the Schedules as disputed, contingent, or unliquidated and which has not been resolved by a Final Order; (c) for which a proof of Claim or Interest has been timely filed or deemed timely filed with the Bankruptcy Court and as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, or which is otherwise Disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order.  Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim or Interest shall be considered Disputed to the extent that (i) the amount of the Claim or Interest specified in a proof of Claim or Interest exceeds the amount listed in the Schedules and/or (ii) the Claim or Interest is classified differently in the proof of Claim or Interest than in the Schedules.  To the extent an objection to the allowance of only a portion of a Claim or Interest has been timely filed, such Claim or Interest shall be a Disputed Claim only to the extent of the portion subject to objection.

**1.35.** *"Disputed Amount"* means (a) if a liquidated amount is set forth in a proof of Claim or Interest relating to a Disputed Claim or Interest, (i) the liquidated amount set forth in the proof of Claim or Interest relating to the Disputed Claim or Interest, (ii) an amount agreed to by the Debtor and the Holder of such Disputed Claim or Interest, or (iii) if a request for estimation is filed by any party, the amount at which such Claim or Interest is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the proof of Claim or Interest relating to a Disputed Claim or Interest, (i) an amount agreed to by the Debtor and the Holder of such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim or Interest; or (c) zero, if the Claim or Interest was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated and no proof of Claim or Interest was filed, or deemed to have been filed, by the Bar Date and the Claim or Interest has not been resolved by written agreement of the Debtor and the Holder of such Claim or Interest or an order of the Bankruptcy Court.

**1.36.** *"Dissolution Date"* means the later of (i) the date on which the Debtor has made the final Distribution required under this Plan, (ii) December 31, 2014, or (iii) such other date as is ordered by the Bankruptcy Court.

**1.37.** *"Distribution"* means the property to be distributed under the Plan to the Holders of Allowed Claims or Holders of Allowed Interests.

**1.38.** ***"Distribution Date"*** means the date upon which a Distribution is made in accordance with the Plan to Holders of Allowed Claims or Allowed Interests entitled to receive Distributions under the Plan.

**1.39.** ***"EBITDA"*** means the sum of the Buyer's net income for the EBITDA Sharing Period plus (i) all Interest Expense for such period, plus (ii) all federal, state, and local taxes actually pain in such period, plus (iii) depreciation expenses for such period, plus (iv) amortization expenses for such period.  For the avoidance of doubt, the following income and expense categories will not be included in the calculation of EBITDA during the EBITDA Sharing Period:  (i) one time and non-reoccurring in the ordinary course of business charges and income; (ii) management fees charged by TCFI; (iii) restructuring fees; (iv) any payment required by the Settlement Agreement; and (v) extraordinary maintenance expenses related to the physical assets of the business.

**1.40.** ***"EBITDA Sharing Period"*** means October 1, 2014 to September 30, 2015.

**1.41.** ***"Effective Date"*** means the first Business Day after the Confirmation Date on which (a) no stay or motion for a stay of the Confirmation Order is in effect or pending and (b) all conditions to the Effective Date set forth in Section 9.02 of the Plan have been met or waived; provided, that the condition set forth in Section 9.02(c) may not be waived.  The Debtor will file and serve notice of the Effective Date within five (5) Business Days after its occurrence.

**1.42.** ***"Entity"*** shall have the meaning provided in Bankruptcy Code section 101(15).

**1.43.** ***"Estate(s)"*** means, individually, the estate of the Debtor created under Bankruptcy Code section 541.

**1.44.** ***"Excluded Contract(s)"*** means any contract(s) not assumed or assigned by the Debtor to the Purchaser under the terms of the Sale Order.

**1.45.** ***"Executory Contract"*** means any prepetition executory contract or unexpired lease within the meaning of Bankruptcy Code section 365 between the Debtor and any other Person(s).

**1.46.** ***"Face Amount"*** means (a) when used in reference to a Disputed Claim or Interest, the Disputed Amount of such Claim or Interest, and (b) when used in reference to an Allowed Claim or Interest, the Allowed amount of such Claim or Interest.

**1.47.** ***"Fee Application"*** means an application for the allowance and/or payment of a Fee Claim.

**1.48.** ***"Fee Claim"*** means a Claim against the Debtor by a Professional or any other party pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 or otherwise for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.49.** ***"Final Decree"*** means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022, which shall, *inter alia*, close the Bankruptcy Cases.

**1.50.** *"Final DIP Order"* means the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (1) Approving Post-Petition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay entered by the Bankruptcy Court on June 13, 2014, located at Docket No. 162 in the Debtor's Bankruptcy Case.

**1.51.** *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order or judgment.

**1.52.** *"General Unsecured Claim"* means a Claim other than an Administrative Claim, a Secured Claim, a Priority Tax Claim, or a Priority Wage Claim.

**1.53.** *"Holder"* means the beneficial owner of a Claim or an Interest. For purposes of voting to accept or reject the Plan, a Person must be a Holder as of the Voting Record Date.

**1.54.** *"Interest"* means the legal, equitable, contractual, and/or other rights of any Person with respect to any capital stock or other ownership interest in a Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in a Debtor.

**1.55.** *"Interim DIP Order"* means the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (1) Approving Post-Petition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing entered by the Bankruptcy Court on May 14, 2014.

**1.56.** *"IRS Tax Claim"* means the Claim held by the Internal Revenue Service.

**1.57.** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

**1.58.** *"Liquidation Trust"* means the ISR Liquidation Trust established under Section 7.03 of the Plan.

**1.59.** *"Liquidation Trustee"* means the trustee(s) governing the Liquidation Trust. The Liquidation Trustee on the Effective Date shall be Greg Coppola of Alderney Advisors LLC.

**1.60.** *"Liquidation Trust Agreement"* means the agreement between the Debtor and the Liquidation Trustee governing the Liquidation Trust, dated as of the Effective Date, substantially in the form set forth in the Plan Supplement.

**1.61.** *"Liquidation Trust Assets"* means (a) the Settlement Payment; (b) the Buyer EBITDA Contribution; (c) all Causes of Action owned by the Debtor's Estate as of the Effective

Date; (d) any funds remaining from the Priority Wage Contribution after payment of all Allowed Priority Wage Claims; and (e) any Cash generated or received by the Liquidation Trust on or after the Effective Date from any other source, including, without limitation, any recovery from the prosecution of Causes of Action.

**1.62.**  ***"Miscellaneous Secured Claim"*** means a Secured Claim other than a Secured Tax Claim or the TCFI Secured Claim.

**1.63.**  ***"Objection Deadline"*** means the last day for filing objections to Claims (other than Administrative Claims or Fee Claims) or Interests, which day shall be the later of (a) one-hundred eighty (180) days after the Effective Date, (b) ninety (90) days after the filing date of any proof of Claim or Interest that is timely filed after the Confirmation Date, or (c) such other day as the Bankruptcy Court may order.  The filing of a motion to extend the Objection Deadline shall automatically extend the Objection Deadline until an order ruling on such motion becomes a Final Order.  If such motion to extend the Objection Deadline is denied, the Objection Deadline shall be the later of the current Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's order denying such motion becomes a Final Order.

**1.64.**  ***"Ordinary Course of Business"*** shall have the meaning provided under Bankruptcy Code section 363 and judicial interpretations thereof.

**1.65.**  ***"Person"*** means any Entity, natural person, corporation, limited partnership, general partnership, joint venture, trust, land trust, business trust, unincorporated organization, or other organization (irrespective of whether it is a legal entity), and any "governmental unit" as that term is defined in Bankruptcy Code section 101(27).

**1.66.**  ***"Petition Date"*** means April 29, 2014, the date the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

**1.67.**  ***"Plan"*** means this Plan of Liquidation and all exhibits or agreements annexed to such plan, referenced in such plan, or included in the Plan Supplement, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.68.**  ***"Plan Supplement"*** means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Debtor ten (10) days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtor.

**1.69.**  ***"Priority Tax Claim"*** means any Claim that, if Allowed against a Debtor, would be entitled to priority under Bankruptcy Code section 507(a)(8).

**1.70.**  ***"Priority Wage Claim"*** means any Claim that, if Allowed against a Debtor, would be entitled to priority under Bankruptcy Code sections 507(a)(4) or 507(a)(5).

8

1.71.   ***"Priority Wage Claim Schedule"*** means the schedule of Priority Wage Claims attached hereto as Exhibit A.

1.72.   ***"Priority Wage Contribution"*** means Cash in the amount of $374,769.91 contributed by the Buyer to the Debtor to be used for the payment and satisfaction of Priority Wage Claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

1.73.   ***"Professional"*** means (a) any Person employed in the Bankruptcy Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or otherwise and (b) any Person seeking compensation or reimbursement of costs and expenses in connection with the Bankruptcy Case pursuant to Bankruptcy Code section 503(b)(4) or 1129(a)(4).

1.74.   ***"Pro Rata"*** means, at any time, the proportion that the Allowed Amount of a Claim or an Interest in a particular Class bears to the aggregate Face Amount of all Claims or Interests (including Disputed Claims or Interests, but excluding Disallowed Claims or Interests) in that Class as of the date of the relevant determination, unless the Plan provides otherwise.

1.75.   ***"Rejection Bar Date"*** means the deadline by which any Person must file a Rejection Claim, which deadline shall be the later of (a) thirty (30) days after service of a notice of the Effective Date or (b) such other date as is prescribed by the Bankruptcy Court.

1.76.   ***"Rejection Claim"*** means a Claim by a party to an Executory Contract that has not been assumed by a Debtor pursuant to the Plan or a prior Final Order entered in the Bankruptcy Case for damages arising from the rejection by a Debtor of such Executory Contract under Bankruptcy Code section 365.

1.77.   ***"Retained Cause of Action"*** means any Cause of Action transferred to the Buyer under the terms of the Sale Order.

1.78.   ***"Sale"*** means the sale of all or substantially all of the Debtor's Assets.

1.79.   ***"Sale Order"*** means the June 16, 2014 order entered by the Bankruptcy Court approving the Sale of substantially all of the Debtor's Assets in accordance with section 363 of the Bankruptcy Code, located at Docket No. 173 in the Debtor's Bankruptcy Case.

1.80.   ***"Schedules"*** means the schedules of Assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such items have been or may be modified, supplemented or amended.

1.81.   ***"Secured Claim"*** means a Claim against the Debtor secured by a Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, on or against property in which the Estate has an interest, or a Claim that is subject to setoff under Bankruptcy Code section 553, but only to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553, or in either case as agreed upon in writing by the Debtor and the Holder of such Claim.  Secured Claims shall include Claims secured by Liens

junior in priority to other Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all Liens that are senior in priority.  Unless the Plan specifically provides otherwise, the amount of any Claim that exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

1.82.   *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a tax assessed against property of an Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

1.83.   *"Settlement Agreement"* means the Settlement Agreement and Plan Support Agreement approved by the Bankruptcy Court by order dated June 17, 2014.

1.84.   *"Settlement Payment"* means Cash in the amount of $100,000 paid by the Buyer to the Debtor under the terms of the Settlement Agreement.

1.85.   *"Statutory Damages"* means any damages, fees, costs, penalties, or other amounts awarded under any state or federal statute, including but not limited to 29 U.S.C. § 216(b).

1.86.   *"TCFI"* means TCFI IG LLC n/k/a ISR Group LLC.

1.87.   *"TCFI Secured Claim"* means the Secured Claim held by TCFI.

1.88.   *"TDR Tax Claim"* means the Claim asserted by the Tennessee Department of Revenue.

1.89.   *"Unclaimed Property"* means any Distribution under the Plan that, for a period of one year after the applicable Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with the Debtor), is either (a) attributable to the Holder of an Allowed Claim that has failed to prepare, execute and return an Internal Revenue Service Form W-9, (b) returned as undeliverable, or (c) otherwise unclaimed.

1.90.   *"Voting Record Date"* means the date approved by the Bankruptcy Court as of which a Person must be the Holder of a Claim or an Interest for purposes of voting on the Plan.

## ARTICLE II
## SUMMARY OF THE PLAN

This summary describes certain major elements of this Plan.  The remaining sections of the Plan deal with each of the subjects contained in this summary in greater detail.  Those sections of the Plan are controlling, and this summary does not change, nor shall it be deemed to change nor utilized in construing, the other provisions of this Plan.  Additional explanatory information is also contained in the Disclosure Statement accompanying this Plan.

15263569.2

This Plan is the product of negotiations between the Debtor, TCFI, and the Committee and the resulting Settlement Agreement. Substantially all of the Debtor's Assets have been sold to the Buyer via a private sale process approved by the Bankruptcy Court under the Sale Order. The Debtor's remaining Assets will be liquidated and distributed to Holders of Allowed Claims in the amount and priorities set forth in Articles III and VI of this Plan.

**ARTICLE III**
**UNCLASSIFIED CLAIMS**

**3.01.  Administrative Claims.**

(a)  **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, (iii) a liability in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date. Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)  **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within ninety (90) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. An objection to a Fee Application must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person whose Fee Application is the subject of the objection no later than thirty (30) days before the hearing on such Fee Application. Any party in interest who fails to timely file an objection shall be deemed to have waived such objection and the late filed objection shall not be considered in connection with a hearing on such Fee Application.

(c)  **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 3.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 3.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order after notice and an opportunity for hearing.

(d)  **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed

11

Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 3.01(e) below) shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash from the Debtor equal to the Allowed amount of such Administrative Claim within thirty (30) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

**(e)      Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of a Debtor after the Petition Date during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 3.02.    Priority Tax Claims.

All Allowed Priority Tax Claims will paid in Cash on or before the Effective Date or otherwise satisfied under the terms of the Sale Order.

### 3.03.    U.S. Trustee Fees.

The Debtor shall timely pay to the United States Trustee all quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Debtor's Bankruptcy Case is closed, converted, or dismissed. The Debtor shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date until the Debtor's Bankruptcy Case is closed, converted, or dismissed.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.01.    Introduction.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

Except for the unclassified Claims discussed in Article III above, Section 4.02 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with Bankruptcy Code section 1122(a). A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class. If a Claim or Interest is acquired or transferred, the Claim or

12

Interest shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim or Interest.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**4.02.    Claims Against and Interests in the Debtor.**

Class 1:  DIP Loan Claim

Class 2:  Priority Wage Claims

Class 3:  IRS Tax Claim

Class 4:  TDR Tax Claim

Class 5:  Miscellaneous Secured Claims

Class 6:  TCFI Secured Claim

Class 7:  General Unsecured Claims

Class 8:  Interests in the Debtor

## ARTICLE V
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND INTERESTS

**5.01.    Unimpaired Claims and Interests**

Claims in Classes 1, 3, 4, and 6 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**5.02.    Impaired Claims and Interests**

Claims in Classes 2, 5, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.  Holders of Interests in Class 8 shall not receive or retain any property or interest in property on account of such Interests under the Plan and therefore such Holders are conclusively presumed to have rejected the Plan under Bankruptcy Code section 1126(g) and are not entitled to vote on the Plan.

**5.03.    Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or Interest or any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

15263569.2

## **ARTICLE VI**
## **TREATMENT OF CLAIMS AND INTERESTS**

### **6.01.   DIP Loan Claim – Class 1**

**(a)      Allowance**.  The Allowed amount of the DIP Loan Claim shall be $0.00.

**(b)      Treatment**.  The DIP Loan Claim has been satisfied in full under the terms of the Sale Order.

### **6.02.   Priority Wage Claims – Class 2**

**(a)      Allowance.**  Each Priority Wage Claim shall be Allowed in the amount set forth in the Priority Wage Claim Schedule.  Any portion of a Priority Wage Claim that exceeds the amount set forth in the Priority Wage Claim Schedule shall be treated as a Class 7 General Unsecured Claim against the Debtor to the extent such Claim is Allowed.

**(b)      Treatment.**  On or as soon as practicable after the later of (a) the Effective Date or (b) the Allowance Date with respect to a Priority Wage Claim, each Holder of such Allowed Priority Wage Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Wage Claim, its *Pro Rata* Share of the Priority Wage Contribution.  .

### **6.03.   IRS Tax Claim – Class 3**

**(a)      Allowance.**  The Allowed amount of each IRS Tax Claim shall be agreed to by the Debtor, the Liquidation Trustee or the Advisory Committee, as appropriate, and the Holder thereof, or determined by the Bankruptcy Court.

**(b)      Treatment.**  On or as soon as practicable after the later of (a) the Effective Date or (b) the Allowance Date with respect the IRS Tax Claim, the Holder of such Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such IRS Tax Claim, (i) Cash in the Allowed amount of such Claim, or (ii) such other, less favorable treatment to which such Holder and the Debtor agree in writing.

### **6.04.   TDR Tax Claim – Class 4**

**(a)      Allowance**.  The Allowed amount of the TDR Tax Claim shall be agreed to by the Debtor, the Liquidation Trustee or the Advisory Committee, as appropriate, and the Holder thereof, or determined by the Bankruptcy Court.

**(b)      Treatment**.  On or as soon as practicable after the later of (a) the Effective Date or (b) the Allowance Date with respect the TDR Tax Claim, the Holder of such Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such TDR Tax Claim, (i) Cash in the Allowed amount of such Claim, or (ii) such other, less favorable treatment to which such Holder and the Debtor agree in writing.

14

**6.05.    Miscellaneous Secured Claim – Class 5**

(a)    **Allowance.**  The Allowed amount of each Miscellaneous Secured Claim shall be agreed to by the Debtor, the Liquidation Trustee or the Advisory Committee, as appropriate, and the Holder thereof, or determined by the Bankruptcy Court.

(b)    **Treatment and Collateral.**  Each Holder of an Allowed Miscellaneous Secured Claim that is senior the TCFI Secured Claim shall receive from the Debtor or TCFI, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, either (i) Cash in the Allowed Amount of such Claim or (ii) the return of the Collateral securing such Claim. Any Allowed Miscellaneous Secured Claim that is junior to the TCFI Secured Claim shall be treated as a Class 7 General Unsecured Claim.  Nothing in this Plan shall be construed as a limitation on, or waiver of, the Debtor's right to object to the Allowance of a Miscellaneous Secured Claim under section 502(a) of the Bankruptcy Code or otherwise.

**6.06.    TCFI Secured Claim – Class 6**

(a)    **Allowance.**  The Allowed amount of the TCFI Secured Claim shall be $0.00.

(b)    **Treatment.**  The TCFI Secured Claim has been satisfied in full under the terms of the Sale Order.

**6.07.    General Unsecured Claims – Class 7**

(a)    **Allowance.**  The Allowed amount of each General Unsecured Claim shall be agreed to by the Debtor, the Liquidation Trustee or the Advisory Committee, as appropriate, and the Holder thereof, or determined by the Bankruptcy Court.

(b)    **Treatment.**  Each Holder of an Allowed General Unsecured Claim shall receive from the Debtor or the Liquidation Trustee, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, its *Pro Rata* Share of the Liquidation Trust Assets after deducting all costs of administering the Liquidation Trust.  The Liquidation Trust Assets include the Buyer EBITDA Contribution, which shall be calculated as follows:

(i)    If Buyer's EBITDA during the EBITDA Sharing Period is less than $2.0 million, the Buyer EBITDA Contribution will equal $0.

(ii)    If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $2 million but less than $3 million, the Buyer EBITDA Contribution will equal $300,000.

(iii)    If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $3 million but less than $4 million, the Buyer EBITDA Contribution will equal $400,000.

(iv)    If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $4 million but less than $5 million, the Buyer EBITDA Contribution will equal $600,000.

15

(v)   If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $5 million but less than $6 million, the Buyer EBITDA Contribution will equal $800,000.

(vi)   If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $6 million but less than $7 million, the Buyer EBITDA Contribution will equal $1,000,000.

(vii)   If Buyer's EBITDA during the EBITDA Sharing Period is equal to or greater than $7 million but less than $8 million, the Buyer EBITDA Contribution will equal $1,200,000.

(viii)   If Buyer's EBITDA during the EBITDA Sharing Period equals or exceeds $8 million, the Contribution will equal 100% of the EBITDA in excess of $8 million up to a maximum Buyer EBITDA Contribution of $1,439,000.

**(c)   Subordination of Statutory Damages.**   Any portion of an Allowed General Unsecured Claim that consists of Statutory Damages shall be subordinated to all other Allowed General Unsecured Claims pursuant to section 510(c) of the Bankruptcy Code.  Holders of Allowed General Unsecured Claims including Statutory Damages will receive no Distribution on account of such Statutory Damages unless and until all other Allowed General Unsecured Claims have been paid in full.  Holders of Allowed General Unsecured Claims including Statutory Damages must be paid in full with interest at the federal funds rate in effect as of the Effective Date prior to any Distribution to the Buyer under Section 7.03(j) of this Plan.

**6.08.   Interests in the Debtor – Class 8**

**(a)   Treatment.**  Interests in the Debtor will be deemed canceled and extinguished as of the Dissolution Date.  Holders of Interests in the Debtor will not receive any Distributions under the Plan on account of their Interests.

## ARTICLE VII
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

**7.01.   Distributions; Sources of Cash For Plan Distributions**

Plan Distributions will be made by the Debtor and the Liquidation Trustee on behalf of the Liquidation Trust.   The Debtor will make all Distributions to Holders of Allowed Administrative Claims and Allowed Claims in Classes 1, 2, 3, 4, 5, and 6.  The Liquidation Trust will make all Distributions to Holders of Allowed Claims in Class 7.  The sources of Cash for Distributions to Holders of Allowed Claims under this Plan by the Debtor will be:  (a) Cash of the Debtor on hand as of the Effective Date; and (b) the Priority Wage Contribution.  Sources of Cash for Distributions to Holders of Allowed Claims under this Plan by the Liquidation Trustee on behalf of the Liquidation Trust will be:  (a) the Settlement Payment; (b) the Buyer EBITDA Contribution; (c) any funds remaining from the Priority Wage Contribution after payment of all Allowed Priority Wage Claims; and (d) any Cash generated or received by the Liquidation Trust

16

on or after the Effective Date from any other source, including, without limitation, any recovery from the prosecution of Causes of Action.

### 7.02.   Calculation and Payment of the Buyer EBITDA Contribution

During the EBITDA Sharing Period, Buyer shall provide the Liquidation Trustee with quarterly reports of Buyer's estimated EBITDA for the preceding quarter.  On or before the end of the month following each quarter during the EBITDA Sharing Period, Buyer shall make quarterly payments of the Buyer EBITDA Contribution, if any, to the Liquidation Trustee based on Buyer's estimated EBITDA during the preceding quarter.

No later than sixty (60) days after the EBITDA Sharing Period, Buyer shall provide the Liquidation Trustee with (i) a calculation of Buyer's EBITDA, (ii) certification from McGladrey LLP, or such other qualified independent accounting firm as may be selected by Buyer, that Buyer's calculation of EBITDA is accurate and in compliance with GAAP, and (iii) funds in the amount of the difference between the EBITDA calculation and the sum of quarterly payments paid to or for the benefit of the Liquidation Trust during the EBITDA Sharing Period.  Buyer's calculation of EBITDA (as certified by an independent accounting firm as set forth above) shall be final and not subject to any objection or other challenge by Liquidation Trustee or any other party.

### 7.03.   The Liquidation Trust

(a)   **Creation of the Liquidation Trust**.  The Liquidation Trust shall be established in accordance with, and under the terms of, this Plan and shall be governed by the Liquidation Trustee according to the Liquidation Trust Agreement.

(b)   **Execution of the Liquidation Trust Agreement**.  On or before the Effective Date, the Debtor and the Liquidation Trustee shall execute the Liquidation Trust Agreement and take all other necessary steps to establish the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims.  The Liquidation Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities comport with the terms of this Plan and do not affect the status of the Liquidation Trust as a liquidation trust for United States federal income tax purposes.  In the event of any conflict between the terms of this Plan and the terms of the Liquidation Trust Agreement, the terms of this Plan shall govern.

(c)   **Purpose of the Liquidation Trust**.  The Liquidation Trust shall be established for the sole purpose of liquidation and distributing its Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Assets of the Liquidation Trust and consistent with the purpose of the Liquidation Trust.  The Liquidation Trust shall not be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code.

(d)   **Liquidation Trust Assets**.  The Liquidation Trust shall consist of the Liquidation Trust Assets.  On the Effective Date, the Debtor shall transfer the Liquidation Trust

17

15263569.2

Assets to the Liquidation Trust. To the extent that applicable law prohibits the transfer or assignment of any Cause of Action to the Liquidation Trust, the Liquidation Trustee shall be entitled to bring such Cause of Action on behalf of the Debtor. The Liquidation Trustee shall be responsible for prosecuting any such Causes of Action and the Liquidation Trust shall be entitled to retain all proceeds of such Causes of Action to be distributed in accordance with the terms of this Plan. The Buyer shall contribute the Buyer EBITDA Contribution to the Liquidation Trust in accordance with the terms of this Plan. Upon transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtor and its successors and assigns shall be released from all liability with respect to the delivery of such assets.

(e)     **The Liquidation Trustee.** The Liquidation Trustee on the Effective Date shall be Greg Coppola of Alderney Advisiors LLC. In the event the Liquidation Trustee is terminated or resigns for any reason, a successor will be designated by the Advisory Committee under the terms of the Liquidation Trust Agreement. The Liquidation Trustee shall be responsible for all decisions and duties with respect to the Liquidation Trust and the Liquidation Trust Assets. The Liquidation Trustee shall, among other things, have the following rights, powers and duties under the Liquidation Trust Agreement: (i) to hold, manage, convert to Cash, and distribute the Liquidation Trust Assets, including prosecuting and resolving the Claims belonging to the Liquidation Trust, (ii) hold the Liquidation Trust Assets for the benefit of Holders of Allowed General Unsecured Claims that are entitled to Distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date, (iii) in the Liquidation Trustee's reasonable business judgment, investigate, prosecute, settle and/or abandon rights, Causes of Action or litigation of the Liquidation Trust, (iv) monitor and enforce the implementation of the Plan, (v) file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidation Trust, (vi) in the Liquidation Trustee's reasonable business judgment object to Claims, and manage, control, prosecute and/or settle on behalf of the Liquidation Trust, objections to Claims on account of which the Liquidation Trustee will be responsible (if Allowed) for making Distributions under the Plan, (vii) take all actions necessary and create any documents necessary to wind up the affairs of the Debtor and implement the Plan, (viii) to hold, manage, and distribute Cash or non-Cash Liquidation Trust Assets obtained through the exercise of its power and authority, (ix) to act as a signatory for the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtor's Assets, and (x) take all necessary action and file all appropriate motions to obtain an order closing the Bankruptcy Case. In all circumstances, the Liquidation Trustee shall have the authority to act in its sole discretion based upon its reasonable business judgment.

(f)     **Liquidation Trustee's Tax Power for Debtors**. Following the Effective Date, the Liquidation Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtor, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "***Tax Returns***") required to be filed or that the Liquidation Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, and the Liquidation Trustee shall pay any taxes shown as due and payable on such Tax Returns. The Debtor shall execute on or prior to the Effective Date the documents necessary to authorize the Liquidation Trustee to correspond with any taxing authorities on the Debtor's behalf and to sign, collect, negotiate, settle and administer all tax payments and Tax Returns. Following the Effective Date, the Liquidation Trustee shall have the sole right, at the Liquidation Trust's

18

expense, to control, conduct, compromise and settle any tax contest, audit or administrative or court proceeding relating to any liability for taxes of the Debtor.  Following the Effective Date, the Liquidation Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes of the Debtor, including for any taxable period ending on or prior to, or including, the Effective Date.

(g)     **Distribution of Liquidation Trust Assets.**  The Liquidation Trustee shall distribute Cash to the Holders of Allowed Claims in Class 7 at its discretion when available, all in accordance with the terms one the Plan and the Liquidation Trust Agreement.  The Liquidation Trustee shall make at least one interim distribution per year, provided, however, that no such distribution will be  required unless the Liquidation Trustee determines, in its sole discretion, that the Liquidation Trust holds sufficient Cash to meet all current and projected costs of administering the Liquidation Trust.  The first interim shall be made, if at all, on or before June 30, 2016.

(h)     **Costs and Expenses of the Liquidation Trust**.  The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and its retained professionals, shall be paid out of the Liquidation Trust Assets.  Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Liquidation Trust.  The initial Liquidation Trustee and any successor Trustee shall be compensated for its services, and reimbursed for its expenses, in accordance with the Liquidation Trust Agreement, as a cost of administering the Liquidation Trust.

(i)     **Retention of Professionals by the Liquidation Trustee.**  The Liquidation Trustee may retain and compensate attorneys and other professionals to assist in its duties as Liquidation Trustee on such terms as the Liquidation Trustee deems appropriate without Bankruptcy Court approval.  Without limiting the foregoing, the Liquidation Trustee may retain any professional that represented parties in interest in the Bankruptcy Case.

(j)     **Return of Surplus Assets to Buyer**.  Any residual Liquidation Trust Assets remaining after all costs and expenses of the Liquidation Trust have been paid and all Allowed General Unsecured Claims, including amounts of Allowed General Unsecured Claims consisting of Statutory Damages, plus interest at the federal funds rate in effect as of the Effective Date have been paid in full shall be transferred by the Liquidation Trust to the Buyer.

(k)     **Dissolution**.  The Liquidation Trustee and the Liquidation Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and the Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in its sole discretion, that the administration of the Liquidation Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit and (iii) all Distributions required to be made by the Liquidation Trustee under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six month period prior to the fifth anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service that any further extension would not

19

adversely affect the status of the trust as a Liquidation trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trustee may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidation Trust, the Liquidation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Liquidation Trust, (ii) donate any balance to a charitable organization described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Liquidation Trust, the Liquidation Trustee and any insider of the Liquidation Trustee, and (iii) dissolve the Liquidation Trust.

**(l)     Indemnification of Liquidation Trustee**. To the fullest extent permitted by law, the Liquidation Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Liquidation Trustee from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without, limitation, fees and expenses of attorneys and other advisors and any court costs incurred) or other liability (collectively, the "Losses") based upon, related to, arising out of or in connection with actions taken or omitted in connection with the operation of the Liquidation Trust, provided, however, that in no event shall the Liquidation Trust be responsible for any Losses of the Liquidation Trustee that arise out of those acts or omissions which are finally judicially determined to have resulted substantially from the Liquidity Trustee's gross negligence or willful misconduct. Any indemnification claim of the Liquidation Trustee shall be satisfied solely from the Liquidation Trust Assets. The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

**(m)     Standing**. The Liquidation Trustee shall have the right to appear in the Bankruptcy Court or any other court of competent jurisdiction and be heard on any matter relating to the interpretation or implementation of the Plan.

**7.04.   Dissolution of the Committee**

The Committee will be dissolved on the Effective Date. Upon the dissolution of the Committee, no notice to the Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS

**8.01.   Rejection of Executory Contracts**

All Assigned Contracts have been assigned to the Buyer in accordance with the terms of the Asset Purchase Agreement and the Sale Order. The Buyer shall be obligated to pay all Cure Amounts up to $100,000.00 and shall assume all obligations (not exceeding $100,000.00) regarding the demonstration of adequate assurance of future performance under the Assigned Contracts. All Excluded Contracts will be rejected under sections 365 and 1123(b)(2) of the Bankruptcy Code.

20

To that end, the Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, including the Excluded Contracts, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be rejected under the Plan of the proposed rejection of such Executory Contract.

### 8.02.    Rejection Claims

Any Rejection Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

### 8.03.    Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 8.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their Assets.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

## ARTICLE IX
### CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE;
### EFFECT OF PLAN CONFIRMATION

### 9.01.    Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)    The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)    The proposed Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and the Committee; and

15263569.2

(c)      All of the schedules, documents, supplements and exhibits to the Plan, shall have been filed in form and substance acceptable to the Debtor and the Committee.

### 9.02.   Conditions Precedent to the Effective Date

The occurrence of the Effective Date of the Plan is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)      The Confirmation Date shall have occurred;

(b)      The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor and the Committee;

(c)      All documents constituting the Plan Supplement shall be in form and substance acceptable to the Debtor and the Committee, and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein;

(d)      The Liquidation Trust Agreement shall have been executed and the Liquidation Trust shall have been formed;

(e)      The Liquidation Trustee shall have been appointed in accordance with the terms of the Liquidation Trust Agreement;

(f)      All Assets to be transferred to the Liquidation Trust in accordance with the Plan shall have been so transferred; and

(g)      The Priority Wage Contribution shall have been funded.

The Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect, if the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Debtor so elects in writing.  In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

### 9.03.   Consequences of Non-Occurrence of Effective Date

If the Effective Date does not timely occur, the Debtor reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.   If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be

15263569.2

extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 10.01.  Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future Holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim or an Interest to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

### 10.02.  Vesting of Assets

Upon the Effective Date, the Liquidation Trust Assets shall vest in the Liquidation Trust. Except as otherwise provided in this Plan and the Confirmation Order, all other property and Assets of the Debtor shall be retained by the Debtor in accordance with the terms of the Plan, free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests.  To the extent any unrecorded Liens against or ownership interests (including, without limitation, tenancy in common interests) in any such Assets exist or are asserted by third parties, such Liens and interests shall be voided and transferred to the Liquidation Trust as of the Effective Date. Commencing on the Effective Date, the Debtor and the Liquidation Trust may deal with their assets and their property and conduct their business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan, the Confirmation Order, and related documents.

### 10.03.  Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs, and rights related thereto (with the exception of the Debtor's offset rights against Priority Wage Claims), including all privileges, shall be and shall be deemed to be transferred to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trust shall have the exclusive right to prosecute, settle, or compromise any Cause of Action transferred to it under the Plan, or to assign any such Cause of Action.  The Liquidation Trust shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of its Estate. The Liquidation Trust shall be entitled to, and shall retain, the proceeds of any Cause of Action. No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.  A description of the Causes of Action or potential Causes of Action is contained in Section VII of the Disclosure Statement.

23

To the extent that applicable law prohibits the transfer or assignment of any Cause of Action to the Liquidation Trust, the Liquidation Trustee shall be entitled to bring such Cause of Action on behalf of the Debtor. The Liquidation Trustee shall be responsible for prosecuting any such Causes of Action and the Liquidation Trust shall be entitled to retain all proceeds of such Causes of Action to be distributed in accordance with the terms of this Plan.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff that seeks affirmative relief against the Debtor or its Assets, officers, directors, or representatives and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that a Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Liquidation Trust shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 10.04. Releases

*Effective as of the Effective Date, and except as otherwise set forth in the Plan or the Confirmation Order, the Committee, the Buyer, and their respective Professionals will be deemed to have forever released, waived and discharged the Debtor and its employees, agents and Professionals from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the right to act in accordance with or otherwise enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered or executed thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan.*

*Effective as of the Effective Date, and except as otherwise set forth in the Plan or the Confirmation Order, the Debtor and its Professionals will be deemed to have forever released, waived and discharged the Committee, the Buyer, and their respective principals, employees, agents and Professionals from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the right to act in accordance with or otherwise enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered or executed thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated,*

24

*fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan.*

### 10.05. Exculpation

*The Committee shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any Holder of a Claim or Interest or any other Person for any act or omission in connection with, relating to, or arising out of the Debtor, the Estate, the administration of the Bankruptcy Case, the operation of the Debtor's business during the Bankruptcy Case, the Settlement Agreement, the formulation, negotiation, preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be distributed under the Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction. The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.*

### 10.06. Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date, all Holders of Claims against and Interests in the Debtor are permanently enjoined from taking any of the following actions against the Debtor's Assets on account of any such Claim or Interest:  (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order.  If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 10.07. Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Section 10.06 of the Plan shall be effective.

15263569.2

**10.08.  Effectuating Documents; Further Transactions; Timing**

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

**10.09.  Incorporation of Terms of Sale Order and Order Approving Global Settlement**

The Plan incorporates and restates the terms of the Sale Order (Docket # 173) and Order Approving Debtor's Motion Pursuant to Section 105 and Bankruptcy Rule 9019 to Approve Global Settlement (Docket # 171).

<u>**ARTICLE XI**</u>
**OBJECTIONS TO CLAIMS AND INTERESTS; DISTRIBUTIONS**

**11.01.  Objections to Claims and Interests**

After the Effective Date, any party in interest, including the Debtor and the Liquidation Trustee, may file objections to Claims and Interests (other than Claims that have been previously Allowed or that are Allowed under the Plan).   The Debtor and the Liquidation Trustee (or their designees, successors and assigns) are not obligated to object to any Claim or Interest, but will nevertheless have standing to object to any such Claim or Interest from and after the Effective Date, if they so elect.

**11.02.  Objection Deadline**

Except as set forth in Sections 3.01(a) and 3.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims and Interests must be filed no later than the Objection Deadline.  An objection to a Claim or Interest will be deemed properly served on the Holder thereof if service is effected by any of the following methods:   (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or Interest or other representative identified on the proof of Claim or Interest or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim or Interest has been filed, by first class mail, postage prepaid, on the Holder of such Claim or Interest at the address set forth in the Schedules.

**11.03.  Settlement of Objections to Claims or Interests**

From and after the Effective Date, the Liquidation Trustee is authorized to approve compromises of all Claims or Interests, Disputed Claims or Interests, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court or notice to any party.

26

### 11.04.  No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 11.05.  Setoffs by the Debtor; No Waiver

In connection with their respective Distributions under the Plan, the Debtor and the Liquidation Trust may, but shall not be required to, set off against or recoup from any Claim or Interest or any payment or Distribution to be made pursuant to the Plan in respect of such Claim or Interest, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law.  Any dispute related to the setoff or recoupment rights of the Liquidation Trust shall be determined by the Bankruptcy Court.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidation Trust of any such claims or Causes of Action that they may have against such Holder or any affiliate of such Holder.

### 11.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)     **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, the Liquidation Trustee shall make Distributions only to Holders of Allowed Claims and Interests, or to their designees as provided herein.  No Holder of a Disputed Claim or Interest will receive any Distribution on account thereof until and to the extent that its Disputed Claim or Interest becomes an Allowed Claim or Interest.  To the extent a Claim or Interest is not a Disputed Claim or Interest but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim or Interest unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter.

In determining the amount of a *Pro Rata* Distribution due to the Holders of Allowed Claims and Interests, the Liquidation Trustee may, in its discretion, make the *Pro Rata* calculation as if all Disputed Claims or Interests were Allowed in the full amount claimed or in the amount estimated under Section 11.06(b) hereof.  The Liquidation Trustee, in its discretion, may withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim or Interest, or to its designee as provided herein, until the Objection Deadline, to enable the Liquidation Trust or any other party in interest to file a timely objection thereto.

(b)     **Claim Estimation.**  The Liquidation Trustee may request estimation or limitation of any Claim or Interest pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim or Interest was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims or Interests are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii)

the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including, without limitation, during the pendency of any appeal relating to any such objection. Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c)     **Distributions After Allowance of Disputed Claim or Interest.** Distributions to each Holder of a Disputed Claim or Interest (or to its designee as provided herein), to the extent it becomes an Allowed Claim or Interest, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims or Interests in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim or Interest becomes an Allowed Claim or Interest, and in any event not later than ten (10) Business Days after the Disputed Claim or Interest becomes an Allowed Claim or Interest, the Liquidation Trustee shall distribute to the Holder thereof any Distribution that would have been made to such Holder had its Claim or Interest been an Allowed Claim or Interest on the date that Distributions were previously made to Holders of Allowed Claims or Interests in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes.

(d)     **Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

### 11.07. Distributions Under the Plan

(a)     **Means of Cash Payment.** Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Liquidation Trustee, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims or Interests, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b)     **Delivery of Distributions.** All Distributions to any Holder of an Allowed Claim or Interest (or to its designee as provided herein) shall be made at the address of each such Holder as set forth on the proof of Claim or Interest filed by such Holder or its designee (or at the last address of such a Holder or its designee known to the Debtor if no proof of Claim or Interest is filed or if the Debtor have been notified in writing of a change of address). If any Holder's Distribution is returned as undeliverable, no further Distributions to such party (or its designee) shall be made unless and until the Liquidation Trust is notified in writing of such party's then current address, at which time all missed Distributions shall be made to such Holder (or its designee) without interest. Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Liquidation Trust in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Liquidation Trust for Distribution to other Holders of Claims and Interests pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred. The

28

Liquidation Trustee may employ or contract with other Persons to assist in or make the Distributions required under the Plan. **Neither the Debtor, the Buyer, nor the Liquidation Trust and their agents and professionals are under a duty to take any action to either attempt to locate any Holder of a Claim or Interest, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim or Interest.**

(c)    **Fractional Dollars; De Minimis Distributions.**    Notwithstanding any other provision of the Plan, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than ten dollars ($10.00) shall be made with respect to any Allowed Claim, and the Liquidation Trustee shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d)    **Unclaimed Property.**    Any Distributions that become Unclaimed Property shall be retained by the Liquidation Trust free and clear of any claims or restrictions thereon, and any entitlement of any Holder of any Claim or Interest to such Distributions shall be extinguished and forever barred. The Liquidation Trustee shall distribute Unclaimed Property to other Holders of Claims and Interests pursuant to the terms of the Plan.

### 11.08.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim or Interest receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Liquidation Trust, failing which, the Liquidation Trustee may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE XII
## ACCEPTANCE OR REJECTION OF THE PLAN

### 12.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately. A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote. A Holder of a contingent or unliquidated Claim or Interest may vote on the Plan in an amount based on the portion, if any, of the Claim or Interest shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 12.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of Interests that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by the Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have

29

voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 12.03.  Section 1129(b) Cramdown

If any impaired Class of Claims or Interests fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b). The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims and Interests.  The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan under Bankruptcy Code section 1129(b).

## ARTICLE XIII
## RETENTION OF JURISDICTION

### 13.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor or the Liquidation Trustee from taking any action as may be necessary to enforce any Cause of Action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

### 13.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim or Interest and the reexamination of Claims and Interests that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims and Interests.  The failure by the Debtor to object to, or to examine, any Claim or Interest for the purposes of voting will not be deemed a waiver of their right to object to, or to re-examine, the Claim or Interest in whole or in part.

### 13.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Assets, (b) disputes concerning the allowance of Claims and Interests, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

15263569.2

### 13.04. Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)     hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)     hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)     hear and determine any disputes regarding the rate or amount of interest, if any, payable on an Allowed General Unsecured Claim pursuant to Section 5.08 of the Plan;

(e)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(f)     hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)     construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(i)     adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(j)     enter any orders, including injunctions, as are necessary to enforce title,

31

rights, and powers of the Debtor to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(k)     hear and determine all questions and disputes regarding title to or recovery of the Assets and property of the Debtor;

(l)     enter a Final Decree closing the Bankruptcy Case;

(m)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(n)     enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(o)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(p)     hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(q)     hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(r)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Amounts;

(s)     hear and determine any objection to any Claim (including any Administrative Claim) or any Interest, including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(t)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) or any Interest and to re-examine Claims or Interests that have been allowed for purposes of voting;

(u)     hear and determine any Cause of Action and any collection or settlement matters related thereto;

(v)     hear and determine any disputes or litigation regarding the validity,

32

priority, or extent of any Lien and any Claim associated therewith; and

(w)    hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 13.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in Article XIII of this Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE XIV**
**MISCELLANEOUS PROVISIONS**

### 14.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

**-to the Debtor:**

Patrick J. Neligan, Jr.
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX  75201
pneligan@neliganlaw.com

**-to the Liquidation Trust**

Gregory G. Coppola, Managing Director
Alderney Advisors LLC
One Towne Square, Suite 1870
Southfield, MI  48076

with a copy to:

Joseph R. Sgroi
Counsel to the Liquidation Trust
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue, 2290 First National Building
Detroit, MI 48226
jsgroi@honigman.com

15263569.2

### 14.02.  Plan Supplement

No later than ten (10) days prior to the Confirmation Hearing, or no later than any other deadline specified in the Plan with respect to a specific agreement or document, the Debtor shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Debtor will serve copies of the Plan Supplement on the Committee and the Office of the United States Trustee and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtor's counsel.  The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 14.03.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 14.04.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and its counsel with written notice of the alleged default.  The Debtor and the Liquidation Trustee will have thirty (30) days from receipt of written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the Debtor and the Liquidation Trust, and their counsel, a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

### 14.05.  Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 14.06.  Modification of the Plan

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125.  The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.  A Holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 14.07.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 14.08.  Due Authorization

Each and every Holder of an Allowed Claim or Interest that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim or Interest, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 14.09.  Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 14.10.  Execution of Documents

Upon application by the Debtor or Liquidation Trust, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 14.11.  Bankruptcy Restrictions

From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

15263569.2

### 14.12.  Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy Cases.

### 14.13.  Integration Clause

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims and Interests, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 14.14.  Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 14.15.  Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consent.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.16.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), (a) the laws of the State of Tennessee shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan unless otherwise specified therein, and (b) the laws of the state of incorporation, formation, or organization of the Debtor shall govern corporate or other

15263569.2

governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereto.

Dated:  December 18, 2014                    Respectfully submitted,

**NELIGAN FOLEY LLP**

 */s/ Patrick J. Neligan, Jr.*
Patrick J. Neilgan, Jr. (TX Bar No. 14866000)
Seymour Roberts, Jr. (TX Bar No. 17019150)
John D. Gaither (TX Bar No. 24055516)
325 N. St. Paul, Suite 3600
Dallas, TX  75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301
pneligan@neliganlaw.com
sroberts@neliganlaw.com
jgaither@neliganlaw.com

and

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

 */s/ E. Franklin Childress, Jr.*
E. Franklin Childress, Jr. (TN Bar No. 07040)
165 Madison Avenue, Suite 2000
Memphis, TN  38103
Telephone:  (901) 577-2147
Facsimile:  (902) 577-8045
fchildress@bakerdonelson.com

**ATTORNEYS FOR DEBTOR**